UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| COURTNEY TAMONE LAMAR ABNEY, | Case No. 6:21-cv-01571-HZ |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| KRISTINE GATES, JAMIE SILVA, AND ODOC/OSCI, | |
| Defendants. | |

HERNÁNDEZ, District Judge:

*Pro se* plaintiff Courtney Tamone Lamar Abney brings this civil rights action against defendants under 42 U.S.C. § 1983 alleging violations of his constitutional rights. Compl., ECF 2. Before the court is defendants' motion for summary judgment. Mot., ECF 48. For the reasons stated below, the court GRANTS defendants' motion.

# BACKGROUND

Plaintiff is an adult in the custody of the Oregon Department of Corrections (ODOC) and is currently housed at the Snake River Correctional Institution. Plaintiff was previously housed at Oregon State Correctional Institution (OSCI) and brings this action based on events that allegedly occurred while he was housed there. Defendant Silva was previously employed by ODOC as a Qualified Mental Health Professional (QMHP) and worked at OSCI from December 2020 to August 2021. Defendant Gates is the Behavioral Health Services (BHS) manager at OSCI and supervises the QMHPs on staff at OSCI.

Plaintiff and defendants filed sworn declarations and ODOC records related to plaintiff's claims. The following facts are based on those documents: On May 2, 2021, plaintiff completed a kyte that stated, "I am gender non conformant and would like to try the hormones give[n] to transexual male[s]". Mot. Def. J. 16, ECF 18. In response to the kyte, defendant Silva met with plaintiff on May 18, 2021. Silva Decl. Ex. 1, ECF 50. Defendant Silva's BHS Progress Notes from his meeting with plaintiff state, "[c]lient would like a psychological evaluation to get on hormone medications." *Id.* On June 25, 2021, defendant Silva met with plaintiff to conduct a gender dysphoria evaluation; following the evaluation, defendant Silva prepared a Gender Dysphoria Evaluation report, which he finalized and signed on August 3, 2021. *Id.* at Ex. 3. During the evaluation, plaintiff "stated he has both male and female sex organs and is 'not uncomfortable' with is body." *Id*. Plaintiff told defendant Silva "he is OK with his body and when he looks in the mirror, he feels 'alright'". *Id.* Plaintiff also reported, "sometimes I feel uncomfortable", and defendant Silva noted in his report, "this does not rise to the level of clinically significant distress." *Id.* Defendant Silva found "[n]o clinically significant incongruence" between plaintiff's "experienced/expressed gender and assigned gender" and

Page 2 – OPINION AND ORDER

concluded, "[t]he subjective report of [plaintiff] DOES NOT meet the criteria for gender dysphoria[.]" *Id.* (emphasis in original).

On June 28, 2021, plaintiff was seen in the mental health clinic by defendant Silva for reasons apparently unrelated to his gender dysphoria evaluation. *Id.* at Ex. 4. Defendant Silva noted in a BHS screening form that plaintiff was "upset/angry" and was "demanding to be moved to MHU 'today!'". *Id.* Defendant Silva conducted a mental health evaluation of plaintiff and recommended changing his mental health diagnosis code from MH3 to MH1 "[d]ue to current assessment, initial mental health assessments, and the last 8 months of documentation". *Id.* at Ex. 5. Defendant Gates "conducted a chart review and diagnoses" and approved the change. *Id.*; *id.* at Ex. 4.

Plaintiff objected to the change in his mental health status level through a series of kytes and grievances he filed between August and December 2021. *See* Mot. Def. J. 4-24, ECF 18; Notice 2-12, ECF 17. In multiple kytes and grievances, plaintiff requested his "MH3 status back" and expressed his belief that MH3 status entitled AICs to immediate release from the Disciplinary Segregation Unit (DSU), or release after a maximum of 30 days in DSU. *See id.* In a grievance dated September 2, 2021, plaintiff described his change to MH3 status as a "form of retaliation". Notice 3, ECF 17. Defendant Gates' response acknowledged plaintiff's mental health diagnosis had been "updated" on June 28, 2021, and explained that DSU sanctions "are no longer solely based on an AIC's Mental Health code", *id.*; rather, they are "decided by hearings, with recommendations regarding an . . . AIC's active mental health symptoms and level of functioning." *Id.* at 2. In his grievance appeal, plaintiff restated his request for reinstatement of MH3 status and to be "admediately [sic] released from DSU." *Id.* at 5.

Page 3 – OPINION AND ORDER

Based on these events, plaintiff brings this lawsuit under 42 U.S.C § 1983 and asserts two claims: (1) Defendants were deliberately indifferent to his serious medical needs, and (2) defendants terminated his MH3 status in retaliation for the kytes and grievances he submitted. Compl. 4-5, ECF 2. The Complaint does not specify whether plaintiff is suing defendant Silva and defendant Gates in their personal capacities, official capacities, or both.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former FED. R. CIV. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the

Page 4 – OPINION AND ORDER

existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (internal quotation marks omitted).

## DISCUSSION

Defendants argue they are entitled to summary judgment on three grounds: (1) the Eleventh Amendment bars suits against defendants ODOC and OSCI as state agencies and bars claims against defendants Silva and Gates in their official capacities; (2) the evidence does not show plaintiff suffered a serious medical need that defendants disregarded; and (3) there is no evidence defendants changed plaintiff's mental health status level to retaliate against him for filing kytes and grievances.[1]

**A.      Eleventh Amendment Immunity**

The Eleventh Amendment generally bars a citizen from suing a state in federal court. *See Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 360 (2001); *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669-70 (1999). Supreme Court precedent establishes that a state is immune from suit in federal court unless Congress has abrogated the state's immunity by appropriate federal legislation or the state itself

---

[1] The court acknowledges the alternative grounds on which defendants seek summary judgment, but finds it unnecessary to reach these arguments: (1) state agencies and state officials acting in their official capacity are not 'persons' within the meaning of Section 1983; (2) there is no *respondeat superior* liability under Section 1983; and (3) qualified immunity protects defendants from liability for monetary damages. *See* Mot. 6, 12, ECF 48.

Page 5 – OPINION AND ORDER

has waived it. *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011). State sovereign immunity proscribes federal suits against state agencies and departments, which are arms of the state. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 (9th Cir. 2003) ("It is well established that agencies of the state are immune under the Eleventh Amendment from private damages or suits . . . in federal court."). "State prisons are considered state agencies for purposes of the Eleventh Amendment." *Gosney v. Oregon Dep't of Corr.*, No. 6:21-CV-1511-SI, 2022 WL 959228, at *2 (D. Or. Mar. 30, 2022) (citing *Allison v. California Adult Auth.*, 419 F.2d 822, 823 (9th Cir. 1969)). Individual defendants who are sued in their official capacities are also protected by Eleventh Amendment immunity. *Brown v. Oregon Dep't of Corr.*, 751 F.3d 983, 989 (9th Cir. 2014) ("'Eleventh Amendment immunity extends to actions against state officers sued in their official capacities because such actions are, in essence, actions against the governmental entity[.]'") (quoting *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982). "[T]he Eleventh Amendment jurisdictional bar applies regardless of the nature of relief sought[.]" *Krainski v. Nevada ex rel. Bd. Of Regents of Nevada Sys. Of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010) (citing *Papason v. Allain*, 478 U.S. 265, 276 (1986)).

      The State of Oregon has not waived its sovereign immunity from suit in federal court. Defendants ODOC and OSCI are therefore immune from suit in this court and are both entitled to summary judgment. *See Oien v. Oregon*, No. 2:17-CV-00978-HZ, 2018 WL 503259, at *3 (D. Or. Jan. 22, 2018) (granting summary judgment to ODOC and Two Rivers Correctional Institution, a prison, based on Eleventh Amendment immunity); *see also, Gosney*, 2022 WL 959228, at *2 (dismissing claims against ODOC based on Eleventh Amendment immunity). To the extent plaintiff sues defendant Silva and defendant Gates in their official capacities, those claims are also barred by the Eleventh Amendment. *See Johnson v. Oregon*, No. 3:21-CV-

Page 6 – OPINION AND ORDER

00702-MO, 2022 WL 1224897, at *4 (D. Or. Apr. 26, 2022) (dismissing claims against ODOC officials sued in their official capacities based on Eleventh Amendment immunity).

**B.     Deliberate Indifference Claim**

Deliberate indifference to the serious medical needs of an AIC is "cruel and unusual punishment" under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976). To establish an Eighth Amendment claim, a plaintiff must show: (1) they had a "serious medical need", and (2) defendants were "deliberately indifferent" to that need. *Id.* at 104. "[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain[.]" *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (internal citations omitted). Deliberate indifference may be satisfied by showing: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Jett*, 439 F.3d at 1096 (quoting *McGuckin*, 974 F.2d at 1059). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

There is no question gender dysphoria is a "sufficiently serious medical need to implicate the Eighth Amendment." *Edmo v. Corizon,* 935 F.3d 757, 785 (9th Cir. 2019). Here, however, the record does not show plaintiff suffers or suffered from gender dysphoria. In May 2021,

Page 7 – OPINION AND ORDER

plaintiff asserted he is "gender non conformant" in a kyte he sent defendants, but defendant Silva conducted a gender dysphoria exam in June 2021 and concluded plaintiff did not "meet the criteria for gender dysphoria". Silva Decl. Ex. 3, ECF 50. During the evaluation, plaintiff stated he was "not uncomfortable" with his body, and he expressed "no desire" either "to be rid of [his] primary and/or secondary sex characteristics" or to have the "sex characteristics of the other gender". *Id*. Ultimately, the evaluation found there was "[n]o clinically significant incongruence" between plaintiff's "experienced/expressed gender and assigned gender". *Id.*

Plaintiff does not dispute the validity of the evaluation and does not argue the report was flawed or based on incomplete or erroneous information. Plaintiff also submits no counter evidence to show he actually suffers from gender dysphoria or some other serious medical condition. Given this, plaintiff's bare assertion that defendants denied him "much needed medication" and "access to proper care" following his gender dysphoria evaluation is not enough to survive summary judgment. Even viewing the evidence in the light most favorable to plaintiff, no reasonable jury could find plaintiff suffered a "serious medical need" to which defendants were deliberately indifferent. Defendants are therefore entitled to summary judgment on plaintiff's deliberate indifference claim. *See Singleton v. Washington Dep't of Corr. Med. Dep't*, No. C06-5572 FDB, 2008 WL 2519884, at *4 (W.D. Wash. June 20, 2008) (granting the defendants summary judgment on the plaintiff's deliberate indifference claim where there was "no evidence that Plaintiff has, in fact, been diagnosed with gender dysphoria").

C.   **First Amendment Retaliation Claim**

"The First Amendment right to file prison grievances is '[o]f fundamental import to prisoners.'" *Eaton v. Eynon*, No. 2:20-CV-1251-SI, 2022 WL 3903554, at *5 (D. Or. Aug. 30, 2022) (citing *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005)). "'[R]etaliatory actions

taken against a prisoner for having exercised those rights'" violate the First Amendment. *Id.* Within the prison context, a viable claim of First Amendment retaliation must demonstrate "'that a state actor took some adverse action against an inmate because of that prisoner's protected conduct, and that such actions chilled the inmate's exercise of his First Amendment rights and the action did not reasonably advance a legitimate correctional goal.'" *Id.* at *5. (citation omitted). "[A]n objective standard governs the chilling inquiry; a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting *Rhodes*, 408 F.3d at 568-69). "To hold otherwise 'would be unjust' as it would 'allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity.'" *Id.*

Here, plaintiff alleges defendants took adverse action by changing his mental health status level and did so to punish him for filing kytes and grievances. Compl. 4-5, ECF 2. It is not clear how the change from MH3 to MH1 constitutes 'adverse action', but even if it were adverse, plaintiff offers no evidence of retaliatory motive. "To raise a triable issue as to motive," plaintiff must offer "direct evidence of retaliatory motive" or circumstantial evidence that is sufficiently "specific to defeat the motion for summary judgment." *McCollum v. Cal. Dep't of Corr. & Rehab*, 647 F.3d 870, 882 (9th Cir. 2011) (internal quotation marks and citations omitted). However, the record before the court contains no evidence of retaliatory motive—whether direct or circumstantial. In fact, the record makes it clear defendants were prompted to reassess plaintiff on June 28, 2021, in response to his on-going and urgent demands to be moved out of DSU and not for some improper or retaliatory purpose. *See* Silva Decl. Ex. 4, ECF 50 (noting plaintiff was

Page 9 – OPINION AND ORDER

"upset/angry" and was "demanding" to be immediately moved from segregation to the mental health unit). The BHS Diagnostic Review also shows the change to plaintiff's mental health status was based on applicable criteria and the professional judgment of defendant Silva and defendant Gates.[2] *See id.* at Ex. 5. Plaintiff does not dispute the substantive findings of the Diagnostic Review and does not otherwise challenge the validity of the evaluation. Thus, plaintiff provides no basis on which a reasonable jury could find defendants changed plaintiff's diagnosis from MH3 to MH1 for some reason other than those stated in the Diagnostic Review. Plaintiff's bare allegation that defendants changed his mental health status level based on a retaliatory motive is insufficient to survive summary judgment. *See Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) (Ninth Circuit cases considering First Amendment retaliation claims "have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient") (citing *McCollum*, 647 F.3d at 882); *see also, Evans v. Gower*, No. 2:17-CV-01162-MK, 2022 WL 3226968, at *14 (D. Or. Aug. 10, 2022) (granting the defendants summary

---

[2] The "Justification for Diagnostic Change" in the BHS Diagnostic Review form completed by defendants on June 28, 2021, provides as follows (with the original references to plaintiff as, Mr. Abney, unaltered):

> Mr. Abney was assessed by BHS on 9/25/20 after reporting he had been experiencing auditory and visual hallucinations. The assessment indicated that some of Mr. Abney's reports were not consistent with a full psychotic disorder and go on to state previous documentation has indicated secondary gain to obtain a 'MH3 diagnosis for purpose of less time in segregation.' On a note from BHS dated 9/8/17, Mr. Abney reported, 'I think it is more of a BHS issue. I don't want to be in Seg and I heard that if you are an MH3 you don't have to stay in Seg.' It was determined during that interview with BHS that Mr. Abney's diagnosis was correct as Substance Use Disorder. Mr. Abney has not been on medication and documentation from BHS going back to November indicate inconsistencies with symptoms and potential for malingering. Due to current assessment, initial mental health assessments, and the last 8 months of documentation, Mr. Abney's diagnosis will be updated to reflect 292.9 Substance Use Disorder.

*Id.*

judgment where the plaintiff "failed to offer any evidence that rises above mere speculation to show Defendant Lopez acted out of a retaliatory motive").

Additionally, no reasonable jury could find defendants changed plaintiff's mental health status to punish him for filing grievances because he filed no grievances before June 28, 2021. Plaintiff filed three kytes prior to June 28, 2021, but those kytes sought assistance regarding plaintiff's claims of gender dysphoria, and defendants responded in a timely manner and by scheduling multiple appointments between BHS staff and plaintiff. *See* Mot. Def. J. 14-6, ECF 18. Plaintiff does not explain how or why his kytes could have prompted defendants to change his mental health status level.

In sum, the record shows defendants changed plaintiff's mental health status for the reasons stated in the Diagnostic Review and not to punish plaintiff for filing kytes. Thus, no reasonable jury could find plaintiff's First Amendment rights were violated based on the record before the court. Defendants are therefore entitled to summary judgment on plaintiff's retaliation claim. *See Wood*, 753 F.3d at 901 (affirming the district court's grant of summary judgment to the defendants on the plaintiff's retaliation claim because "[t]here is . . . insufficient evidence to create a material of fact as to a retaliatory motive")); *see also, Meshell v. Steward*, No. 2:19-CV-01063-AC, 2021 WL 1206577, at *4 (D. Or. Mar. 30, 2021) (granting the defendants summary judgment on the plaintiff's retaliation claim after finding "no evidence of a causal connection" between the defendant's contested action and the plaintiff's "protected activity of pursuing grievances").

**D.    Remaining Claims**

The Complaint alleges plaintiff's rights have also been violated under the Fourth, Fifth, and Fourteenth Amendments. However, the body of the Complaint only alleges facts that could imply a cause of action under the First and Eighth Amendments, as discussed above. Plaintiff does not explain what rights were allegedly violated under the other named amendments and none are apparent to the court. Defendants are therefore entitled to summary judgment on these claims.

## CONCLUSION

The Court GRANTS defendant's motion for summary judgment, ECF 48. Plaintiff's claims are dismissed with prejudice.

IT IS SO ORDERED.

DATED: October 3, 2022

*Marco Hernandez*
Marco A. Hernández
United States District Judge